UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY,<br>P.O. Box 710<br>Tucson, AZ 85702-0710,<br><br>　and<br><br>PATAGONIA AREA RESOURCE<br>ALLIANCE,<br>PO Box 1044<br>Patagonia, AZ 85624,<br><br>　*Plaintiffs*,<br><br>v.<br><br>U.S. ENVIRONMENTAL PROTECTION<br>AGENCY, and<br><br>KIMBERLY Y. PATRICK, in her official<br>capacity as Administrator of the<br>United States Environmental Protection Agency<br>U.S. Environmental Protection Agency<br>1200 Pennsylvania Ave. NW<br>Washington, D.C. 20460<br><br>　*Defendants.* | Case No. _____<br><br>**COMPLAINT FOR DECLARATORY<br>AND INJUNCTIVE RELIEF**<br><br>(Clean Air Act, 42 U.S.C. §§ 7401 *et. seq.*) |

## INTRODUCTION

1. This is a straightforward Clean Air Act deadline suit. Plaintiffs Center for Biological Diversity ("Center") and the Patagonia Area Resource Alliance ("Alliance") seek to compel Defendants the United States Environmental Protection Agency and Administrator Kimberly Y. Patrick (together, "EPA") to perform a mandatory duty to grant or deny a petition to object ("Petition") filed by the Center and Alliance challenging an air pollution permit issued pursuant to Title V of the Clean Air Act.

2. The Petition, filed on September 13, 2024, called on the EPA Administrator to object to a Title V operating permit (referred to as a "Title V permit") issued by the Arizona Department of Environmental Quality. The Title V permit authorized South32 Hermosa Inc. ("South32") to construct and operate the Hermosa Mine in Santa Cruz County, Arizona.

3. The Hermosa Mine, a large heavy metals mine, would be dug into the Patagonia Mountains of southern Arizona, about 50 miles south-east of Tucson, Arizona. If constructed and put into operation, the mine would be a major source of dangerous air pollutants, including particulate matter, nitrogen oxides, carbon monoxide, volatile organic compounds, and a combination of hazardous air pollutants, including heavy metals like lead, manganese, and arsenic.

4. Under the Clean Air Act, the EPA Administrator was required to grant or deny the Center and Alliance's Petition within 60 days of the Petition being filed. Although more than 60 days have passed, EPA has not acted on the Petition.

5. By failing to act on the petition, Defendants UNITED STATES ENVIRONMENTAL PROTECTION AGENCY and KIMBERLY Y. PATRICK, Administration of the EPA, have violated the clear deadline in the Clean Air Act and have thereby deprived Plaintiffs CENTER FOR BIOLOGICAL DIVERSITY and PATAGONIA AREA RESOURCE ALLIANCE and their members of the ability to assure that construction and operation of the Hermosa Mine complies with the Clean Air Act and protects public health and welfare.

## JURISDICTION

6. This is an action against EPA and the EPA Administrator where there is a failure of the Administrator to perform an act or duty under the Clean Air Act which is not discretionary.

This Court has jurisdiction over this action pursuant to 42 U.S.C. § 7604(a)(2) (citizen suit provision of the Clean Air Act) and 28 U.S.C. § 1331 (federal question).

7. An actual controversy exists between the parties. This case does not concern federal taxes, is not a proceeding under 11 U.S.C. §§ 505 or 1146, and does not involve the Tariff Act of 1930. Thus, this Court has jurisdiction to order declaratory relief under 28 U.S.C. § 2201(a) and 42 U.S.C. § 7604(a). If the Court orders declaratory relief, 28 U.S.C. § 2202 and 42 U.S.C. § 7604(a) authorize this Court to issue injunctive relief. 42 U.S.C. § 7604(d) authorizes this Court to award Plaintiffs' costs and attorneys' fees.

## NOTICE

8. By letter dated November 13, 2024, the Center and Alliance provided EPA with 60-days written notice of the organizations' intent to bring suit over the failure of EPA to respond to their September 13, 2024 Petition within 60 days of receiving it. The Center and Alliance provided this notice via certified mail, return receipt requested, pursuant to 42 U.S.C. § 7604(b)(2) and in accordance with 40 C.F.R. Part 54. Notice is deemed given on the postmark date, if served by mail. *See* 40 C.F.R. § 54.2. Although more than 60 days have passed since the organizations gave notice, EPA has not yet granted or denied the Center and Alliance's Petition and remains in violation of the law.

## VENUE

9. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(e) because a substantial part of the events and omissions giving rise to the Center and Alliance's claim occurred in the District of Columbia, given that EPA is headquartered at 1200 Pennsylvania Avenue, NW, in Washington, DC, and performs its official duties in this district. Additionally, Kimberly Y. Patrick, the Administrator of the EPA, officially resides in the District of Columbia.

## **PARTIES**

10. Plaintiff CENTER FOR BIOLOGICAL DIVERSITY is a national 501(c)(3) nonprofit conservation organization with more than 89,000 members throughout the United States and the world. The Center's mission is to ensure the preservation, protection, and restoration of biodiversity, native species, ecosystems, public lands and waters, and public health through science, policy, and environmental law. Based on the understanding that the health and vigor of human societies and the integrity and wildness of the natural environment are closely linked, the Center is working to secure a future for animals and plants hovering on the brink of extinction, for the ecosystems they need to survive, and for a healthy, livable future for all of us. The Center is headquartered in Tucson, Arizona, with offices throughout the United States, including in Washington, DC.

11. PATAGONIA AREA RESOURCE ALLIANCE is a grassroots, community-driven nonprofit dedicated to the preservation and protection of local mountains, wildlife, and watersheds in and around the community of Patagonia, Arizona. The Alliance is a citizen watchdog organization that monitors the activities of mining companies and government agencies to ensure any actions taken in or near Patagonia ultimately benefit public lands, air, water, wildlife, and the health and prosperity of the community.

12. The Center and Alliance are "person[s]" within the meaning of 42 U.S.C. § 7602(e). As such, the Center and Alliance may commence a civil action under 42 U.S.C. § 7604(a).

13. Members of the Center and Alliance live, raise their families, work, recreate, and conduct educational, research, advocacy, and other activities in areas that would be affected by air pollution from the Hermosa Mine. The Title V permit allows the Hermosa Mine to release air pollutants that degrade the air, environment, economy, and scenery used and enjoyed by

members of the Center and Alliance. These pollutants harm the economic, health, aesthetic, recreational, procedural, and organizational interests of members of the Center and the Alliance. EPA's failure to respond to the Center and Alliance's Petition harms members of the Center and Alliance because it deprives those members of information about whether the Hermosa Mine Title V permit complies with the requirements of the Clean Air Act. Those members are further deprived of their legal rights to a process that would protect them from exposure to pollutants to the extent required by law.

14. Two members of the Center in particular, Russ McSpadden and Jeremy Nichols, regularly recreate on public lands in the Patagonia Mountains that would be impacted by air pollution from the Hermosa Mine, including lands along Harshaw Creek and in the Flux Canyon area that are part of the Coronado National Forest. These members regularly enjoy viewing wildlife, including birds, hiking, and rockhounding on public lands that would be impacted by the offensive sights and smells of air pollution from the Hermosa Mine. Air pollution would be released from dozens of generator engines at the mine, from heavy machinery, from conveyor systems, crushers, and other mine equipment. This air pollution would detract from their recreational enjoyment of public lands in the Patagonia Mountains and harm these members. These Center members intend to continue to regularly recreate on public lands in the Patagonia Mountains and would be harmed by air pollution during future visits.

15. These and other Center members are harmed because the Title V permit for the Hermosa Mine is flawed and does not limit air pollution such that public health and welfare is protected in accordance with the Clean Air Act. The harms that they would experience as a result of air pollution under the current Title V permit would be reduced if EPA were to take

action on the Petition and ensure the Hermosa Mine operates in full compliance with all requirements under the Clean Air Act.

16. Two members of the Alliance in particular, Carolyn Shafer and Joni Clark Stellar, live in the community of Patagonia, Arizona, which would be most directly impacted by the operations of the Hermosa Mine, would be located less than five miles from the community. These members enjoy the clean air and natural beauty of Patagonia and the nearby Patagonia Mountains. Their quality of life is directly tied to the health of the environment in and around Patagonia. Air pollution from the Hermosa Mine would impact these Alliance members and diminish their quality of life in Patagonia. These members would experience the offensive sights and smells of air pollution from the Hermosa Mine on a daily basis. Air pollution would be released from mine operations, filling the sky with visible soot and dust and other harmful gases. Related mine equipment, including heavy trucks and other machinery, would release pollution directly in the town of Patagonia as ore and waste is hauled, harming these members of the Alliance. These Alliance members also recreate extensively on public lands in the Patagonia Mountains that would be impacted by the Hermosa Mine. This air pollution would detract from these members' recreational enjoyment of public lands in the Patagonia Mountains and harm these members. These Alliance members intend to continue living in Patagonia and to regularly recreate on public lands in the Patagonia Mountains and would be harmed by air pollution for the foreseeable future.

17. These and other Alliance members are also harmed because the Title V permit for the Hermosa Mine is flawed and does not limit air pollution such that public health and welfare, including their quality of life, is protected in accordance with the Clean Air Act. The harms that they would experience as a result of air pollution under the current Title V permit would be

reduced if EPA were to take action on the Petition and ensure the Hermosa Mine operates in full compliance with all requirements under the Clean Air Act.

18. During the permitting process for the Hermosa Mine, the Center and Alliance provided extensive comments detailing issues regarding the draft Title V permit's terms and conditions and the ability of the permit to comply with the Clean Air Act. Subsequently, the Center and Alliance petitioned the EPA Administrator to object to the issuance of the Title V permit.

19. The Defendants' failure to act on the Center and Alliance's Petition prevents the organizations and their members from challenging an unfavorable decision or from benefiting from a favorable decision on the Petition. EPA's decision on the Petition, if favorable, is likely to result in changes to the Permit that would reduce pollution from the facility, thereby reducing the harms that Center and Alliance members would experience for the foreseeable future. The Petition challenged the Title V permit's failure to assure adequate monitoring of air pollution, to properly limit emissions from mine equipment, and the failure to assure the enforceability of terms and conditions. A favorable ruling would invariably lead to an improved permit, which in turn would mean less harmful pollution and assurances of compliance.

20. The Clean Air Act violations alleged in this Complaint have injured and continue to injure the interests of the Center and Alliance and their members. These injuries would continue until the Court grants the relief requested herein. Granting the relief requested in this lawsuit would redress Plaintiffs' and Plaintiffs' members' injuries by compelling the Defendants to action that Congress determined to be an integral part of the regulatory scheme for protecting human health and the environment from air pollution.

21. Defendant United States Environmental Protection Agency is the federal agency charged by Congress with the duty to administer the Clean Air Act, including the mandatory duties at issue in this case.

22. Defendant Kimberly Y. Patrick is the Administrator of the EPA.  The Administrator is responsible for implementing the Clean Air Act, including the requirement to grant or deny the Center and Alliance's Petition within 60 days of receiving it.  Administrator Kimberly Y. Patrick is sued in her official capacity.

## LEGAL FRAMEWORK

23. Congress enacted the Clean Air Act to "speed up, expand, and intensify the war against air pollution in the United States with a view to assuring that the air we breathe throughout the Nation is wholesome once again." H.R. Rep. No. 91-1146, 91st Cong., 2d Sess. 1, 1, (1970) *as reprinted in* 1970 U.S. Code Cong. & Admin. News 5356, 5356.  The Clean Air Act aims "to protect and enhance the quality of the Nation's air resources." 42 U.S.C. § 7401(b)(1).

24. To help meet this goal, the 1990 amendments to the Clean Air Act created the Title V permit program—an operating permit program that applies to all major sources of air pollution. 42 U.S.C. §§ 7661–7661f.  A "major source" for purposes of Title V is any source that has actual emissions or the potential to emit above the major source threshold, which is generally 100 tons per year of any criteria air pollutant, including particulate matter, carbon monoxide, and nitrogen oxides, or 10 tons per year of any Hazardous Air Pollutant, or 25 tons per year of any combination of Hazardous Air Pollutants.  42 U.S.C. §§ 7661(2); 7602(j); 7513a; 7512a; 7511a; 7412(a)(1); *see also* 40 C.F.R. § 70.3.

25. A primary purpose of the Title V permitting program is to reduce violations of the Clean Air Act and improve enforcement by recording in a single document all the air pollution control requirements that apply to a major source of air pollution.  Major sources of air pollution cannot legally discharge pollutants into the air unless they have a valid Title V operating permit. 42 U.S.C. § 7661a(a).

26. Congress charged EPA with administering Title V, *see* 42 U.S.C. § 7661a(b), but the Clean Air Act provides that EPA may approve state programs to administer the Title V permitting program with respect to sources within their borders.  42 U.S.C. § 7661a(d).

27. EPA fully approved Arizona's administration of its Title V permit program in 2001. *See* 66 Fed. Reg. 63,175 (Dec. 5, 2001).  The Arizona Department of Environmental Quality is responsible for issuing Title V permits in Arizona.

28. Before a state with an approved Title V permit program can issue a Title V permit, the State must forward the proposed Title V permit to EPA.  *See* 42 U.S.C. § 7661d(a)(1)(B). EPA then has 45 days to review the proposed permit.  *See* 42 U.S.C. § 7661d(b)(1).  EPA must object to the issuance of the permit if EPA finds that the permit does not comply with all applicable provisions of the Clean Air Act.  *Id.*

29. If EPA does not object to the issuance of a Title V permit within its 45-day review period, "any person may petition the Administrator within 60 days after the expiration of the 45-day review period" to object to the proposed permit.  42 U.S.C. § 7661d(b)(2).

30. Once the EPA Administrator receives such a petition, the Clean Air Act requires that "[t]he Administrator shall grant or deny such petition within 60 days after the petition is filed." 42 U.S.C. § 7661d(b)(2).  If the EPA fully or partially denies a petition, the Administrator's decision is subject to judicial review.  *See* 42 U.S.C. § 7661d(b)(2).  Any petition for judicial

review must be filed within 60-days after notice of the Administrator's decision is published in the Federal Register.  *See* 42 U.S.C. § 7607(b)(1).

31. If the Administrator objects to a permit, the permitting agency must revise and re-submit the permit for EPA approval. 42 U.S.C. § 7661d(b)(3).

32. If the EPA Administrator fails to comply with a duty that is not discretionary, such as acting on a petition within the statutorily mandated timeframe, the Clean Air Act allows any person to bring suit to compel EPA to perform its duty.  *See* 42 U.S.C. § 7604(a)(2).

33. Prior to bringing suit to compel mandatory action under the Clean Air Act, the EPA Administrator must first be provided at least 60-days' notice.  *See* 42 U.S.C. § 7604(b)(2).  Notice is deemed given on the postmark date, if served by mail.  *See* 40 C.F.R. § 54.2.

34. Courts are authorized to award costs of litigation, "including reasonable attorney and expert witness fees," in issuing any final order in any action filed under 42 U.S.C. § 7604(a)(2) of the Clean Air Act.  42 U.S.C. § 7604(d).

## FACTUAL BACKGROUND

35. As proposed and permitted, the Hermosa Mine is a massive heavy metals mining operation in the Patagonia Mountains of southern Arizona in Santa Cruz County, spewing air pollution from hundreds of sources.  The permitted expansion of the mine would develop two underground ore deposits: the Taylor sulfide deposit, from which zinc, lead, and silver would be extracted; and the Clark oxide deposit, from which zinc, manganese, and silver would be extracted.  The mine is expected to irreversibly alter the nature and character of this region of the Patagonia Mountains, an exceptionally biodiverse region of southern Arizona.  Although some mining has occurred in the region, the full build out of the Hermosa Mine would impact nearly

1,000 additional acres with roads, heavy equipment, processing facilities, generators, and mine tailings.



**The Hermosa Mine in the Patagonia Mountains of southern Arizona. Current operations include remediation of historic mining in the region and exploration of new mineral deposits. The Title V Permit would authorize full build-out of mining operations as proposed by South32. Photo by Patagonia Area Resource Alliance.**

36. Development of the mine would require the construction and operation of an extensive system of pollutant-emitting activities. This would include a significant underground mining operation that would entail blasting, hauling, crushing, and conveying, as well as surface support facilities, including mine shaft ventilation, cooling, power generation from dozens of internal combustion engines, crushing and concentrating, materials handling, tailings management, heavy equipment operations and vehicle traffic, fuel storage, wastewater treatment, and laboratory operations. In its permit application, South32 identified nearly 200 discrete emission units that would be associated with the Hermosa Mine.

37. The Hermosa Mine would have the potential to release hundreds of tons of air pollutants known to endanger public health and welfare. In addition to releasing a number of harmful criteria air pollutants for which national ambient air quality standards have been established, such as particulate matter, carbon monoxide, and nitrogen oxides, the mine would

11

also release a number of hazardous air pollutants. Hazardous air pollutants are a group of especially toxic substances regulated under Section 112 of the Clean Air Act that pose disproportionately harmful impacts to public health and the environment. Among the hazardous air pollutants that would be released by mining operations are the following: heavy metals including lead, arsenic, manganese, nickel, and selenium; benzene, a known carcinogen; and other toxic organic compounds including acetaldehyde, acrolein, formaldehyde, xylene, and toluene, hexane, and methanol. The mine would also release more than one million tons of greenhouse gases annually. The table below details the Hermosa Mine's potential to emit for key pollutants.

**Potential Air Pollutant Emissions from Hermosa Mine**

| Pollutant | Total Potential to Emit (tons per year) |
|---|---|
| Particulate Matter (PM) | 653.02 |
| Coarse particulate matter ($PM_{10}$) | 222.56 |
| Fine particulate matter ($PM_{2.5}$) | 69.24 |
| Nitrogen oxides ($NO_x$) | 203.61 |
| Sulfur dioxide ($SO_2$) | 6.45 |
| Volatile organic compounds (VOCs) | 95.94 |
| Lead | 1.23 |
| Manganese compounds | 5.76 |
| Benzene | 0.57 |
| Formaldehyde | 18.24 |
| Total Hazardous Air Pollutants | 76.19 |
| Carbon dioxide equivalent | 1,176,929 |

38. A coalition of groups, including the Center and Alliance, submitted detailed comments on the Hermosa Mine draft Title V permit on February 26, 2024. The Center and Alliance raised several objections to the Title V permit.

39. The Arizona Department of Environmental Quality responded to the Center and Alliance's comments on June 10, 2024. At the same time, the Arizona Department of Environmental Quality submitted the proposed Title V permit to EPA for its 45-day review.

40. EPA did not object to the issuance of the Title V permit during its 45-day review period, beginning the 60-day period during which "any person may petition the Administrator" to object.  42 U.S.C. § 7661d(b)(2).

41. After EPA's 45-day review ended on July 24, 2024, the Arizona Department of Environmental Quality issued the final Title V permit on August 26, 2024, formally authorizing South32 to construct and operate the Hermosa Mine.

42. On September 13, 2024, a coalition of organizations, including the Center and Alliance, timely and properly petitioned the EPA Administrator to object to the Hermosa Mine Title V permit pursuant to 42 U.S.C. § 7661d(b)(2) and 40 C.F.R. § 70.8(d).  EPA acknowledged receipt of the September 13, 2024 Petition in an email sent to the Center on September 18, 2024.

43. The Petition raised numerous objections related to the Title V permit's ability to assure the Hermosa Mine would operate in compliance with the Clean Air Act.  The Petition was based on objections raised with reasonable specificity during the public comment period and detailed how the Arizona Department of Environmental Quality issued a permit that failed to fully comply with the Clean Air Act.

44. 42 U.S.C. § 7661d(b)(2) required the EPA Administrator to approve or deny the Petition within 60 days, by November 12, 2024.

45. The Administrator did not approve or deny the Petition by November 12, 2024.

46. Because EPA failed to act by the mandatory deadline to either approve or deny the Petition, the Center and Alliance sent the EPA Administrator a notice of intent to file suit pursuant to 42 U.S.C. § 7604(b)(2).  The notice letter, sent via certified U.S. mail with return receipt requested, was postmarked November 13, 2024.

47. More than 60 days have now elapsed since the Center and Alliance sent the EPA Administrator their notice of intent to file suit. As of the filing of this Complaint, the Defendants have not granted or denied the Petition.

## CLAIM FOR RELIEF

**Failure to Grant or Deny the Center and Alliance's Clean Air Act Title V Petition**

48. Plaintiffs incorporate by reference the allegations and information in all preceding paragraphs of this Complaint, as if set forth in full herein.

49. The Center and Alliance timely filed their Petition with the EPA Administrator on September 13, 2024, within 60 days of the conclusion of EPA's 45-day review period and the Administrator's failure to object, seeking objection to the Hermosa Mine Title V permit.

50. Pursuant to 42 U.S.C. § 7661d(b)(2), the Administrator had a nondiscretionary duty to grant or deny the Petition within 60 days after it was filed, or by November 12, 2024.

51. Defendants did not grant or deny the Petition within 60 days. As of the date of this Complaint, Defendants still have not granted or denied the Petition.

52. Accordingly, Defendants have violated and continue to violate the Clean Air Act with respect to the Center and Alliance's Petition, 42 U.S.C. § 7661d(b)(2).

53. This Clean Air Act violation constitutes a "failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator" within the meaning of the Clean Air Act's citizen suit provision. 42 U.S.C. § 7604(a)(2).

54. Defendants' violation is ongoing and would continue unless remedied by this Court.

### REQUEST FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment providing the following relief:

A. A declaration that Defendants violated the Clean Air Act by failing to grant or deny within 60 days the Center and Alliance's Petition requesting that the Administrator object to the Title V permit for the Hermosa Mine;

B. An order compelling Defendants to grant or deny the Center and Alliance's Petition for an objection to the Title V permit for the Hermosa Mine by a date certain, in accordance with an expeditious schedule prescribed by the Court, but no later than 60 days after entry of the order, and to publish in the Federal Register a notice granting or denying the Petition within ten working days following the Administrator's decision;

C. An order retaining jurisdiction over this matter to enforce and effectuate the Court's order, until such time as Defendants have fully complied with their mandatory duty under the Clean Air Act;

D. An order awarding Plaintiffs their costs of litigation, including reasonable attorneys' and expert fees; and

E. Such other and further relief as the Court deems just and proper.

DATE: January 21, 2025

Respectfully submitted,

Respectfully submitted,

*/s/ Jonathan Evans*
Jonathan Evans (Bar No. CA00044)
CENTER FOR BIOLOGICAL DIVERSITY
2100 Franklin St., Suite 375
Oakland, CA 94612
Cellphone: (213) 598-1466
Email: jevans@biologicaldiversity.org

*Counsel for Plaintiffs*